And we'll next hear argument in Vasquez-Hoyos. Mr. Vasquez-Hoyos petitions this Court to amend proceedings in this matter back to the Board of Immigration Appeals so that a credibility determination can be made of his testimony, and also so that current country conditions in Peru can be evaluated in light of his showing of past persecution. Counsel, I'm going to assume for the sake of this question that you're right all the way up to the issues that you've raised, that there was no adverse credibility determination, that we have jurisdiction and so forth. The immigration judge made an alternative holding that even if everything else were demonstrated, even if he was completely credible, what he said did not amount to persecution on account of a protected ground. What's wrong with that particular segment of the immigration judge's decision, and why wouldn't that be supported by substantial evidence and thus require us to deny the petition? We think that his testimony compels the opposite. We think it's a mixed motive case. We think obviously his testimony shows that the people who were making these phone calls, threatening phone calls, were interested in getting ambulance and medical services. But over the course of 100 threats, he said his testimony was that there were 100 threats. And then at each time, he vociferously voiced his opposition against their methodology, against their ideology. And it appears over the course of these 87, 1988, 1989, that other things started to happen. But wasn't there also testimony that as soon as he changed jobs, the threats ceased and that they didn't come after him at home? Well, he left in April of 1990. It appears he left the clinic around January of 1990. It also appears that there was a threat made against his children. And he said, he testified that now we're going to go after your children. It appears that he never, that they never were able to find out about his family. But they did make that threat, or so goes his testimony. Was there testimony that there were any threats in that two or three-month period right before he left, after he quit his job? Your Honor, there was no testimony. I don't know how many questions were directed at him. He appeared pro se, so we do have, I mean, the testimony is somewhat sketchy. I guess my problem is that under our standard of review, even if there are two ways to look at what happened, one way the way that you've described, but another way the way the immigration judge looked at it, as long as one isn't compelled to look at it your way, then we would have to uphold his analysis of the facts. We would argue that there's, that the Court's compelled to find that it was reasonable, given the testimony, given the escalation of what was happening, compelled to find that it was reasonable to conclude that it was in part because of the prosecution and the threats were directed at him, in part because of one of the protected grounds. So it's not. Counsel, you suggested that it be rebanded for a determination about credibility. It was never challenged, was it? His credibility? The I.J. never said this individual is not credible. He went on to not apparently consider whether it was a mixed motive case or not. We, well, Your Honor, with all due respect, my reading of the record is that the judge found that since Mr. Vasquez had not introduced any supporting documents, he said that he was unable to do that. The judge found, made a negative credibility finding, but never, and in this I think you're correct, he never, the judge never found the testimony not to be credible. And we've always held, or for many years at least, that you don't need documents. So the C.I.J. was incorrect in that. Yes, Your Honor. So shouldn't we be looking directly at whether the evidence which was adduced was adequate to support his claim for asylum? I agree. But, you know, we addressed that argument because it's there. But we do think the judgment was fake and did not make it. Well, the question is, though, what difference that makes, because he made an alternative holding. So assume he was incorrect. So we've got jurisdiction. Why are you compelled to hold that there was anything other than persecution on account of his or threats on account of his position at the clinic? Well, Your Honor, I think what happens, and the fact that by the time of, well, the end of the four-year or three-year period of time, Mr. Vasquez testifies that the threats were very, very severe. I'm not saying that. We're not suggesting that. The question is, why is one compelled to find that the threats were related to anything other than to his position at the medical clinic? Put differently, that they're not related to his race, his religion, a political opinion or anything else that is a protected ground. Well, I don't think it would be reasonable to conclude anything else. And so I think there's the compulsion is to find that it's reasonable to conclude that it was one of the protected grounds. Why would they destroy the clinic if they wanted the help from the clinic? Obviously, this is a retaliatory action. They destroyed the entire clinic. If they wanted help from the clinic, why would they destroy the clinic? Why would they threaten his children if they were only interested in his help in providing ambulance service? His children have nothing to do with that. He no longer worked at the clinic. Where in the record do you point to his having let them know what his political opinion was? If I may, Your Honor. Good question. You cited pages 120 and 173 of the administrative record. Yes, Your Honor. I'm sorry, 121, line 567. Well, he says he refused to cooperate and to cooperate at night. No time would I have them. But he also did concede that he was not called at home and that after he left his job, he was not threatened. I think that's on page 80 of the administrative record. Well, that could very well be because they did not have information regarding his home. But when they called him, they asked for him personally. He does specify that they asked for him personally. So we think that they did. Well, he was the manager, wasn't he? Yes, Your Honor. That is correct. So it would make sense for them to contact him if what they wanted was the material assistance from the clinic. I guess my difficulty, as I said earlier, is that your analysis is certainly permissible, but it seems to me that so is the analysis of the administrative judge. I guess what we're arguing is that we don't think that he needs to compel the finding that there was on this basis. He needs to compel that it's reasonable. That's when the mixed motive, you don't say, well, you have to compel that this was the reason, because then that would do away with the whole reasonableness determination. Well, you say it's a mixed motive. The immigration judge said it wasn't a mixed motive, that it was on account of a non-protective ground. And I guess the only question is whether that's a permissible finding on this record. And we don't think it is, given the fact that the threats became more and more severe and that they, at the final instance, were directed at his children and that the guerrilla groups destroyed what they were trying to receive. They destroyed the clinic. So how would they get help from the clinic if they destroyed it? There's no reasonable conclusion to be drawn from that except that it was a retaliatory action against Mr. Vasquez and against anyone else there who had a voiced opposition to their group. I'll reserve time. Thank you. Okay. Good morning, Your Honors. My name is Jennifer Paisner on behalf of the Respondent. The decision below rests on two alternate grounds. The first is an adverse credibility determination based on the failure of the petitioner to provide readily available corroborating evidence. To me, neither half of that matches this record. First of all, as Judge Fletcher said earlier, we have often held that a petitioner's own testimony is enough and that the absence of corroboration is not fatal to a claim. But I don't see in this record an adverse credibility determination at all. The IJ sort of goes halfway towards it and then wanders off to the alternative ground. At least that's how I read it. I'll address those two issues, but the second ground, as this Court has discussed, is the merits finding. With respect to the first issue, the adverse credibility determination based on the lack of available corroborative evidence, this Court has held that if a petitioner testifies credibly, there's no requirement that he produce available corroborative evidence. However, this Court has specifically held that the failure, solely the failure to provide available corroborative evidence, can be the basis for an adverse credibility determination. And this Court first decided that in a case in 1997, Mejia Pays. This Court then in, I don't remember exactly what year the Lada decision was, but that's the decision where this Court held that the petitioner cannot be required to produce corroborative evidence if the petitioner testified credibly. But counsel, here, what the IJ's reason was the credibility determination was based simply on the lack of documents. He never says that anything that the petitioner said was not accurate or credible. That's correct. However, this Court in the case of Sidhu v. INS, which was decided in 2000, did hold that the failure to produce available corroborative evidence in and of itself can be sufficient to sustain an adverse credibility determination. So there doesn't need to be a finding that the testimony somehow, a specific finding that the petitioner did not, the words of his testimony weren't credible. So what the immigration judge did here is permissible under this Court's law in Mejia Pays and in Sidhu, and its holding in Lada is inapplicable to this situation. So in Sidhu, this Court held that the immigration judge can make an adverse credibility determination based on the failure to provide available corroborative evidence. If the immigration judge we probably don't need to get gray hairs or split them either on whether the IJ did that exactly in the narrow window that our cases may or may not have left open. Well, no, because there was this alternate finding on the merits that the petitioner failed to establish persecution on account of a protected ground. In this case, the protected ground claimed was petitioner's political opinion that he allegedly voiced to the rebels that he was opposed to their movement. The evidence does not compel the conclusion that, does not compel an opposite conclusion from the immigration judge that what this was was that the rebels were not after him for any political opinion he had voiced but for the resources that he managed as manager of this ambulance clinic. Counsel, on page 120 of the administrative record, in answer to this question from the IJ, the IJ said, besides your position as a manager of the ambulances, was there any reason that you think you were targeted or threatened? And his response was, the reason was because I was firm in my conviction, not cooperating with people that were destroying the country, killing innocent people, harming business, and place bombs attacking the embassy and schools. So that's a pretty clear statement of his political view and his view that they had done this in part because of that. How would you distinguish this case from Borha, which is an embanked case of our court involving rebels in the Philippines? Well, this may be a statement of his political opinion, but there's no evidence that compels the conclusion that the rebels persecuted him because of this stated political conviction. This isn't a mixed motive case. How do you distinguish this from Borha? I'm not familiar with the exact holding of this court in that case. It's an embanked opinion of our court, and I suggest to you that Borha and this case are pretty much on all fours. In that case, the woman had a little business, and they kept asking her for, really extorting from her, asking her for revolutionary taxes, which she paid for a while. Then their price escalated, and she said she no longer could pay it, and she, just as here, said she opposed the rebels. Now, how are these two cases different? Maybe you need to go back to your office and read Borha. Well, I mean, as I understand, each case rests on the particular facts of the case, and if you look at the facts of this case, the facts of this case do not compel the conclusion that any persecution was on account of his expressed political opinion. He testified that he initially received the threatening phone calls at his office, in his position as manager of ambulance services, before he expressed any political opinion. Most significantly, when he left his job as manager of ambulance services in January of 1990, the threat ceased. Let me ask you something. Is there anything in this record to show that he ever told anybody what his views were in accordance with the sentence that Judge Fletcher just read? Because in Borha, the petitioner had told the folks who were trying to extort from her that she was pro-government and that she wouldn't enlist and she wouldn't help them. Now, is there anything in this record which shows that this petitioner told these people what Judge Fletcher just read? Well, Petitioner pointed to, or Petitioner's counsel pointed to, his testimony at pages 120 and 121 of the administrative record, where he expresses his political opinion. I understand that that is what his political opinion, what he said his political opinion was. My question is, is there any place in the record which shows that he told the folks who were threatening him that that's what his political opinion was? I believe he testified at one point that he told them that he wouldn't help them. That may be at 173. I didn't bring the record with me. I don't have it. It doesn't go that far. Yeah, that's not in his. Okay. I'm thinking of something else. 123 maybe? I don't know. I really don't know. He says, I keep correct on 173, he says, When I received threatens over the phone, I told them my opposition. I believe that was the reason they tried to kill me. Was that in the application? It's in the, it is the application, I think. Okay. Our position is that even assuming that there was something in the record where he specifically said that he opposes them, that the evidence still does not compel the conclusion that any persecution was on account of that. Most significantly, because when he left his position as manager, he testified, or there was absolutely no testimony that any of these threats continued. And the three main incidents that formed the alleged persecution, two of them didn't involve him at all. One was an attack on an ambulance that he wasn't in. One of them was an attack on the clinic where he wasn't there. And then the third one was the attack on the ambulance when he was present. But he alleges that he was beaten. The person who he was driving with, his co-worker, was shot. However, there was no testimony that his co-worker expressed any sort of political opinion. And, in fact, he testified that during that incident, the rebels told him that the reason that they were attacking the ambulance was because they wanted him to release the wounded and give them free ambulance service. None of which is persecution on account of a political opinion. But he refused and didn't want to cooperate, so they beat him. Is that correct? According to his testimony, yes. But it's still, there's no testimony that that was on account of his political opinion, as opposed to on account of a failure to cooperate or desire of the rebels to obtain resources, which is not a basis for political asylum. I see that my time is over. Okay, anything else? All right. Thank you, counsel. Mr. Everett? Just briefly. It does appear from the record that the threat directed against the children was after he left the clinic. That's on 117. And he says, they told me that they were going to go against my children. That was the reason of my decision. Now, we don't know what decision he's talking about, if that was to leave the country. But he did leave the country approximately three months thereafter. And it appears that he felt motivated to leave because he thought his family was going to be involved. Briefly, I just want to address the argument, and the way I understand the case law, is not that. He compels the conclusion that the persecution was on account of one of the five protected grounds. What we're arguing is that Borja and the Board of Immigration's appeal case, a matter of SP, when the evidence compels that it's reasonable to conclude that it was mixed motive. And we think it does here because you cannot look at this evidence and say it's only because they wanted help with ambulance service or medical services. Because it's contradictory to the story of the clinic. And to show interest in the children after the clinic is destroyed, shows that they're not only interested in the clinic, they're interested in him and his family. Thank you. All right. Thank you, Mr. Wright. Thank you, counsel. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber